**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**TERESA H.,**

**Plaintiff,**

**v.** **Case No.: 2:26-cv-00002**

**FRANK BISIGNANO,**
**Commissioner of the**
**Social Security Administration,**

**Defendant.**

# PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Irene C. Berger, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are the parties' briefs seeking judgment on the pleadings. (ECF Nos. 4, 5).

The undersigned fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's motion be **GRANTED** to the extent that it requests remand of the Commissioner's decision, (ECF No. 4); the Commissioner's motion for judgment on the pleadings be **DENIED**, (ECF

No. 5); the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and this case be **DISMISSED**, with prejudice, and removed from the docket of the Court.

## I. Procedural History

On September 21, 2022, Teresa H. ("Claimant") protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging a disability onset date of September 20, 2022, due to rheumatoid arthritis, lupus, chronic obstructive pulmonary disease ("COPD"), migraines, fibromyalgia, anxiety, depression, and back problems. (Tr. at 75, 146, 177, 331-45).

After her applications were denied at the initial and reconsideration levels of review, Claimant requested an administrative hearing, which was held by telephone on February 11, 2025, before the Honorable Scott Shimer, Administrative Law Judge (the "ALJ"). (Tr. at 75, 98-120, 145, 158, 171, 184, 208). Claimant, who was represented by counsel, and Charles Wheeler, an impartial vocational expert (the "VE"), testified. (Tr. at 98-120). By written decision dated February 26, 2025, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 75-91). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Claimant's request for review on November 4, 2025. (Tr. at 1-6).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (ECF No. 1). The Commissioner subsequently filed a certified Transcript of the Administrative Proceedings. (ECF No. 3). Claimant filed a Brief in Support of Complaint, and the Commissioner filed a Brief in Support of Defendant's Decision to which Claimant filed a reply. (ECF Nos. 4, 5, 6). Thus, the matter is ripe for resolution.

## II. Claimant's Background

Claimant was 47 years old on her alleged disability onset date and 49 years old on the date of the ALJ's decision. (Tr. at 89). She communicates in English, has at least a high school education, and previously worked as a home attendant. (Tr. at 89, 328).

## III. Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the

measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Third, after rating the degree of functional limitation from

the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the four functional areas of (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status requirements for DIB through December 31, 2026. (Tr. at 85, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since September 20, 2022, the alleged disability

onset date. (*Id.*, Finding No. 2).

At the second step, the ALJ found that Claimant had the following severe impairments: obesity, chronic obstructive pulmonary disease, lumbar degenerative disc disease, arthritis, major depressive disorder, generalized anxiety disorder, a somatic symptom disorder, and a trauma and stressor related disorder. (Tr. at 85, Finding No. 3).

At the third step, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any impairment contained in the Listing. (Tr. at 86-87, Finding No. 4). The ALJ found moderate limitations in each of the four areas of mental functioning and concluded that Claimant's mental impairments did not satisfy the "paragraph B" or "paragraph C" criteria. (Tr. at 86-87).

Before proceeding to step four, the ALJ assessed Claimant's RFC, concluding that Claimant possessed:

> [T]he residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for occasionally balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs. She has not been able to climb ladders, ropes, or scaffolds. The claimant should have avoided concentrated exposure to extreme cold, wetness, dusts, fumes, odors, gases, and poor ventilation. She should have avoided any exposure to vibration or to work at unprotected heights or around unguarded moving machinery. She has been limited to simple, routine tasks with occasional workplace changes and occasional interaction with the general public, co-workers, and supervisors.

(Tr. at 87, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform her past relevant work as a home attendant, DOT 354.377-014, which the ALJ described as

medium exertional work at the lower level of skilled work.[1] (Tr. at 89, Finding No. 6).

Thus, the ALJ evaluated whether Claimant could perform other substantial gainful activity. The ALJ considered that Claimant was born on August 22, 1975, and was 47 years old on the alleged disability onset date, which is defined as a younger individual age 45 through 49. (*Id.*, Finding No. 7). The ALJ further remarked that Claimant had at least a high school education and that transferability of job skills was not material to the disability determination because use of the Medical-Vocational Rules as a framework supported a finding of "not disabled" regardless of whether Claimant had transferable skills. (Tr. at 89-90, Findings Nos. 8-9).

At the fifth step, the ALJ noted that if Claimant could perform the full range of sedentary work, Medical-Vocational Rule 201.21 would direct a finding of "not disabled." (Tr. at 90). However, because Claimant's additional limitations impeded her ability to perform all or substantially all of the requirements of sedentary work, the ALJ relied upon the testimony of the VE. (*Id.*). The VE testified that an individual of Claimant's equivalent age, education, work experience, and RFC could perform work as a charge account clerk, DOT 205.367-014, with approximately 12,000 jobs in the national economy; order clerk, DOT 209.567-014, with approximately 10,000 jobs; and touch-up screener, DOT 726.684-110, with approximately 7,000 jobs. (Tr. at 90, 115-18).

Based upon the VE's testimony, the ALJ concluded that Claimant was capable of making a successful adjustment to other work existing in significant numbers in the

[1] The ALJ described Claimant's past work as being "at the lower level of skilled." (Tr. at 89). At the hearing, however, the VE classified the home attendant position as SVP 3, semiskilled work. (Tr. at 115). This discrepancy does not affect the present analysis because Rule 201.14 applies to both skilled and semiskilled past work when the skills are not transferable.

national economy and, therefore, was not disabled from September 20, 2022, through the date of the decision. (Tr. at 90-91, Finding No. 11).[2]

## IV. Claimant's Challenge to the Commissioner's Decision

Claimant argues that the ALJ erred at step five by failing to consider whether her borderline age status warranted use of the next higher age category. (ECF No. 4 at 2). She notes that the ALJ issued his decision slightly less than six months before she attained age 50 and contends that the regulations and agency policy required the ALJ to consider whether to classify her as an individual closely approaching advanced age rather than mechanically apply her chronological age. (*Id.* at 3-6). Claimant asserts that application of the higher age category would result in a finding of disability under Medical-Vocational Rule 201.14 and that the ALJ's failure to acknowledge or analyze the borderline age issue prevents meaningful judicial review. (*Id.* at 3-7).

In response, the Commissioner acknowledges that the ALJ did not evaluate the borderline age issue but contends that remand is not warranted. (ECF No. 5 at 8-10). The Commissioner argues that the Appeals Council expressly considered Claimant's borderline age situation and determined that the factors in the record did not support application of the higher age category. (*Id.* at 9). The Commissioner further notes that Claimant was near the outer limit of the six month borderline period and argues that her additional RFC limitations did not further erode the occupational base because the VE identified a significant number of jobs that she could perform. (*Id.* at 9-10).

In reply, Claimant contends that the Appeals Council's conclusory statement does

[2] Finding No. 10 states that "no jobs" Claimant could perform existed in significant numbers in the national economy, which is inconsistent with the ALJ's accompanying step five discussion and ultimate determination. (Tr. at 90-91). Claimant does not raise that apparent drafting error as a separate challenge, and the undersigned does not rely upon it as a basis for remand.

not cure the ALJ's failure to analyze the issue because it does not identify the factors it considered or explain why the higher age category was rejected. (ECF No. 6 at 1-3). She further argues that the more detailed reasons advanced by the Commissioner in this action constitute impermissible *post hoc* rationalizations. (*Id.* at 3-4).

## V. Relevant Evidence

The undersigned has reviewed all of the evidence before the Court. The following evidence is most relevant to the issues in dispute.

### *A. Treatment Records*

On March 8, 2023, Claimant saw Stephanie Dillon, D.O., and reported that one of her COPD medications was not effective. She complained of chest pain with physical activity, stated that she had "no energy to do anything and everything hurt," and reported a constant headache. Claimant also advised that she had an upcoming appointment with a rheumatologist. Dr. Dillon noted that Claimant's BMI was 67.14, but the remainder of the examination was unremarkable. Dr. Dillon prescribed medication for Claimant's COPD and persistent headache. (Tr. at 1223-35).

On December 4, 2023, Claimant established care with John Apgar, D.O. Claimant reported COPD, anxiety, depression, fibromyalgia, lupus, and chronic back pain. She complained of weakness in her lower extremities and difficulty with prolonged standing and walking. (Tr. at 1019-25). Claimant's BMI was 63.95. Dr. Apgar assessed, among other conditions, COPD with acute exacerbation, fibromyalgia, chronic thoracic back pain, chronic low back pain with right-sided sciatica, generalized anxiety disorder, and recurrent major depressive disorder. He prescribed diclofenac, referred Claimant to physical therapy and pain management, and adjusted her mental health medications.

(*Id.*). X-rays of the thoracic spine showed degenerative changes, while lumbar imaging showed degenerative changes and spondylolisthesis at L5-S1. (Tr. at 1004-07).

On March 4, 2024, Claimant presented to Pain Management 360 for treatment of low and mid-back pain. She reported that she had previously tried heat, ice, physical therapy, chiropractic treatment, prescription and over-the-counter medications, and other conservative measures. Claimant reported that diclofenac was not effective. The examination documented tenderness throughout the spine, and she was assessed with thoracic spine pain and lumbar radiculopathy. The provider ordered additional imaging and prescribed Celebrex and baclofen. Claimant continued treatment with Pain Management 360 through May 28, 2024. (Tr. at 1748-68).

On March 21, 2024, Claimant was evaluated by Amanda Kinnard, APRN, at St. Mary's Neurosurgery for persistent neck and back pain with radiation into her upper and lower extremities. Claimant reported that her low back pain was constant and radiated primarily into her right lower extremity, with symptoms worsening upon standing and walking and improving to some extent with sitting, leaning forward, or lying down. (Tr. at 1312-15). On examination, Claimant had mild tenderness of the cervical and lumbar spine, reduced strength in portions of the right lower extremity, and an antalgic gait, although she ambulated independently without an assistive device. (Tr. at 1313). Lumbar x-rays showed grade 2-3 anterolisthesis of L5 on S1 and prominent multilevel osteophytes, while cervical imaging showed prominent anterior osteophytes from C4 through C7. (Tr. at 1317-20). Ms. Kinnard ordered cervical and lumbar MRIs and planned to see Claimant after the imaging was completed. (Tr. at 1314-15).

A lumbar MRI performed on July 7, 2024, showed bilateral L5 spondylolysis with grade 2 spondylolisthesis, which had increased from the prior study. The MRI also

showed worsening degenerative changes at L4-L5 with severe left lateral recess and neural foraminal stenosis, as well as moderate spinal canal stenosis and high-grade bilateral neural foraminal stenosis at L5-S1. (Tr. at 1746-47).

Claimant also received mental health treatment. On June 6, 2024, she reported to Christina Hankins, Ph.D., that she continued to struggle with stress associated with caring for her mother and was spending the majority of her time performing caregiving tasks, including tasks that her mother was capable of performing herself. Claimant continued to be diagnosed with recurrent major depressive disorder and generalized anxiety disorder. (Tr. at 1970-78).

On September 25, 2024, Claimant reported to Dr. Apgar that she continued to experience back and radicular symptoms and stated that she was scheduled for back surgery on October 3, 2024. She also stated that she continued to attend pain management. (Tr. at 1832-43). In November 2024, Claimant reported that the surgery had been deferred because of concerns regarding her recovery, and Dr. Apgar again referred her for a rheumatology evaluation. (Tr. at 1816, 1820).

On January 28, 2025, Claimant complained to Dr. Apgar of right shoulder and joint pain. Examination revealed tenderness and limited range of motion of the right shoulder. X-rays showed mild-to-moderate acromioclavicular osteoarthritis, moderate glenohumeral osteoarthritis, and degenerative changes of the cervical and thoracic spine. Dr. Apgar referred Claimant to physical therapy. (Tr. at 1980-83).

### *B. Evaluations, Prior Administrative Findings, and Opinions*

On May 8, 2023, Nicole M. Smith, M.A., a licensed psychologist, performed a consultative psychological evaluation of Claimant at the request of the Social Security Administration. (Tr. at 708-16). Claimant reported longstanding depression and

anxiety, chronic pain, difficulty functioning outside of her home, and problems being around crowds. (Tr. at 709-10). On mental status examination, Claimant was cooperative but nervous, with fair eye contact, depressed and anxious mood, and a tearful affect. Her immediate and recent memory were normal, remote memory was mildly deficient, concentration and persistence were within normal limits, and her pace was variable. Ms. Smith assessed Claimant's social functioning as moderately impaired. (Tr. at 712-13). She diagnosed somatic symptom disorder with predominant pain, persistent, moderate to severe; recurrent major depressive disorder, severe; agoraphobia; generalized anxiety disorder; unspecified alcohol-related disorder; and unspecified trauma and stressor related disorder. (Tr. at 713-14).

On June 3, 2023, Karen Jewell, APRN, FNP-BC, performed a consultative physical examination at the request of the Social Security Administration. (Tr. at 717-25). Claimant complained primarily of back and hand pain and reported constant upper and lower back pain that radiated into her left leg and worsened with bending, sitting, standing, lifting, and walking. (Tr. at 718). On examination, Claimant had a normal gait and no difficulty transferring or removing and replacing her socks and shoes. She brought a cane belonging to her husband but did not use it during the examination. (Tr. at 720-22). Claimant had normal sensation and reflexes, could walk on her toes, perform a squat, and stand on one leg, but declined to attempt heel walking because of pain. She had tenderness along the spinal processes without paravertebral muscle spasm. (Tr. at 721). Ms. Jewell assessed lumbago with radiculopathy and obesity and concluded that Claimant's cane was not necessary. (Tr. at 721-22).

At the initial level of review, state agency medical consultant James B. Smith, M.D., determined that Claimant could perform sedentary exertional work. He found that

she could occasionally lift and carry 10 pounds, frequently lift and carry less than 10 pounds, stand or walk for approximately two hours, and sit for approximately six hours during an eight-hour workday. (Tr. at 153-54). Dr. Smith limited all postural activities to occasional and found that Claimant should avoid concentrated exposure to extreme cold and wetness and even moderate exposure to vibration. (Tr. at 154). On reconsideration, Palle Reddy, M.D., substantially affirmed those findings. (Tr. at 179-81).

State agency psychiatrist James Binder, M.D., evaluated Claimant's mental impairments at the initial level of review. Dr. Binder found mild limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing herself, with a moderate limitation in interacting with others. (Tr. at 152). He further found no limitations in understanding and memory, sustained concentration and persistence, or adaptation for purposes of the mental RFC, but he determined that Claimant was moderately limited in several areas of social interaction and could occasionally interact with coworkers and the public. (Tr. at 155). At the reconsideration level, Jeff Boggess, Ph.D., affirmed the prior mental assessment and likewise concluded that Claimant could occasionally interact with coworkers and the public. (Tr. at 178-81).

### *C. Claimant's Testimony*

At the administrative hearing, Claimant testified that she graduated from high school and completed training to become a certified nursing assistant approximately 27 years earlier. (Tr. at 102-03). She thereafter worked in home health and caregiving positions. (Tr. at 103-05).

Claimant stated that she experienced constant back pain that primarily radiated into her right leg and worsened with movement, particularly walking. (Tr. at 106-07). She estimated that she could walk approximately 15 feet using her husband's walker and explained that a doctor had advised her to use a walker both at home and when away from home. (Tr. at 107-08). Claimant further testified that her husband had suffered a stroke and that she used his motorized chair whenever she left the house for approximately the past year. (Tr. at 108-09). She did not run errands, required assistance with dressing and bathing, and estimated that she could sit for approximately 30 minutes before needing to change positions. (Tr. at 109-11). According to Claimant, she spent much of her time in a recliner or lying down, had difficulty sleeping, took naps during the day, and was in pain constantly. (*Id.*).

Claimant also described limitations involving her upper extremities. She stated that she could lift a gallon of milk with both hands, but her right shoulder was worse than her left, she had difficulty reaching with her right arm, and she lacked strength in her hands. (Tr. at 111-12). She further reported experiencing flares of lupus three or four times per week. (Tr. at 112). Regarding her mental functioning, Claimant testified that she watched movies and listened to audiobooks but had difficulty concentrating on them. (Tr. at 113). She also reported mood swings and episodes of anger and stated that her husband and daughter performed the grocery shopping. (*Id.*).

## VI. <u>Standard of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence"

to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to ensuring that the ALJ followed applicable Regulations and Rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII. <u>Discussion</u>

Claimant challenges the ALJ's step five determination on the basis that the ALJ failed to consider whether her proximity to age 50 warranted application of the next higher age category. (ECF No. 4 at 2-7). Age is one of the vocational factors considered in determining whether a claimant can adjust to other work. 20 C.F.R. §§ 404.1563, 416.963. A claimant under age 50 generally is classified as a "younger person," while a claimant between ages 50 and 54 is considered a person "closely approaching advanced age." *Id.* §§ 404.1563(c)-(d), 416.963(c)-(d). The regulations caution that the age categories should not be applied mechanically in a borderline situation. *Id.* §§ 404.1563(b), 416.963(b). If a claimant is "within a few days to a few months of reaching an older age category" and application of the older category would result in a finding of

disability, the Commissioner must consider whether to use the older age category after evaluating the overall impact of the factors in the case. *Id.*

In *Ard v. O'Malley*, 110 F.4th 613 (4th Cir. 2024), the Fourth Circuit considered the borderline age regulation in the case of a claimant who was six months and seventeen days from the next age category. The court concluded that the claimant was outside the agency's six month definition of a borderline situation. *Id.* at 618-20. The Fourth Circuit therefore did not decide what analysis is required when a claimant actually falls within the borderline period, expressly leaving that question "for another day." *Id.* at 620 n.5.

Within days of the Fourth Circuit's initial decision in *Ard*, the SSA revised its borderline age guidance. The current version of POMS DI 25015.006, issued in August 2024, expressly instructs adjudicators to "[d]ocument how [they] considered borderline age regardless of whether [they] allow or deny the claim" and to explain the decision to use either the claimant's chronological age or the next higher age category, including the case-specific factors supporting that determination. POMS DI 25015.006(G). The agency's current guidance defines "a few days to a few months" as a period not exceeding six months. POMS DI 25015.006(B). A borderline age situation exists when the claimant is within that period, use of the claimant's chronological age results in a finding of not disabled, and use of the next higher category results in a finding of disabled. *Id.* § 25015.006(C).

The existence of a borderline age situation does not automatically require use of the higher age category. Rather, the adjudicator must determine which age category more accurately reflects the claimant's ability to adjust to other work after considering the overall impact of the claimant's RFC, age, education, and work experience. *Id.* § 25015.006(E). The agency applies a sliding scale approach under which a claimant who

is further from the next age category generally must show greater additional vocational adversity to justify use of that category. *Id.* § 25015.006(E)(2). An additional RFC limitation may be considered vocationally adverse even when it does not substantially erode the occupational base, although a factor already accounted for in the applicable Medical-Vocational Rule should not be counted twice. *Id.* § 25015.006(E)(1)(d).

Here, Claimant falls within the agency's six month period. She was born on August 22, 1975, and attained age 50 on August 21, 2025, under the agency's age-attainment policy. POMS DI 25015.005(B). The ALJ issued his decision on February 26, 2025, slightly less than six months earlier. (Tr. at 89-91). The Commissioner does not dispute that Claimant was within the relevant period and acknowledges that a borderline age situation may exist. (ECF No. 5 at 9).

The age category determination also potentially affects the outcome. The ALJ found that Claimant was limited to sedentary work, had at least a high school education, and could not perform her past relevant work. (Tr. at 87, 89). He classified Claimant as a younger individual and used Medical-Vocational Rule 201.21 as a framework for his step five determination. (Tr. at 89-90). Claimant argues that if she were instead treated as an individual closely approaching advanced age, Rule 201.14 would direct a finding of disability. (ECF No. 4 at 3-4). The Commissioner likewise recognizes that application of the higher age category would change the result if the remaining vocational requirements of that rule are satisfied. (ECF No. 5 at 9).

Claimant's education does not appear to provide the type of recent direct entry into skilled work contemplated by Rule 201.14. Although she completed training related to certified nursing assistant work, Claimant testified that the training occurred approximately 27 years before the administrative hearing. (Tr. at 102-03). Agency

guidance generally considers education or training to provide direct entry into skilled or semiskilled work when the training was completed no more than five years before adjudication and prepares the claimant for work that she remains capable of performing. POMS DI 25015.010(F)(3)-(4).

Transferability of skills presents a separate issue. The ALJ did not find that Claimant lacked transferable skills. Rather, he stated that transferability was "not material" because, under the "younger person" rules he applied, the Medical-Vocational Guidelines supported a finding of not disabled regardless of whether Claimant possessed transferable skills. (Tr. at 89-90). The VE classified Claimant's past relevant work as semiskilled but did not identify any transferable skills, and the three occupations identified at step five were unskilled. (Tr. at 114-18). When transferability is not material, agency policy directs the adjudicator to use the applicable nontransferable skills rule as a framework; that procedure does not constitute an affirmative finding that Claimant actually lacks transferable skills. POMS DI 25025.022(A)-(B). Thus, if use of the higher age category makes transferability material under the applicable Medical-Vocational Rule, the Commissioner may need to make an additional vocational finding on remand. The Court should not make that finding for the SSA. HALLEX likewise directs the ALJ to explain that the borderline age situation was considered, state whether the higher age category or chronological age was applied, and identify the specific factors considered. HALLEX HA 01220.042(C)(5).

The central problem, here, is that the ALJ did not conduct any borderline age analysis. The Commissioner expressly acknowledges that "[t]he ALJ did not evaluate the borderline age issue in this case." (ECF No. 5 at 9). The ALJ stated that Claimant was 47 years old on her alleged onset date and classified her as a younger individual. (Tr. at 89).

He did not acknowledge that Claimant was approaching age 50 at the time of his decision or discuss whether her vocational circumstances supported use of the higher category. (Tr. at 89-91).

The Commissioner contends that this omission does not require remand because the ALJ conducted an individualized vocational inquiry rather than relying mechanically upon the Medical-Vocational Guidelines. (ECF No. 5 at 8-10). Given Claimant's additional limitations, the ALJ obtained testimony from the VE concerning whether a person with Claimant's age, education, work experience, and RFC could perform other work. (Tr. at 90, 115-18). The VE identified three sedentary, unskilled occupations existing in significant numbers in the national economy. (*Id.*). According to the Commissioner, this individualized vocational evidence demonstrates that Claimant retained the ability to adjust to other work. (ECF No. 5 at 9-10).

There is out-of-circuit authority supporting the Commissioner's argument that reliance on individualized vocational evidence may obviate the need for a separate borderline age analysis. In *Pupo v. Commissioner, Social Security Administration*, 17 F.4th 1054, 1062 (11th Cir. 2021), the claimant was 66 days from the next age category. Nevertheless, the Eleventh Circuit held that the ALJ did not err in failing to separately consider her borderline age status because he did not apply the Medical-Vocational Guidelines mechanically, but instead relied on VE testimony due to the claimant's nonexertional limitations. *Id.* at 1062.

The Fourth Circuit cited *Pupo* in *Ard* and observed that an individualized vocational inquiry "may well operate as the functional equivalent" of a borderline age inquiry. *Ard*, 110 F.4th at 620 n.4. However, the Fourth Circuit did not adopt *Pupo*'s approach as the rule governing genuine borderline age cases. Because the claimant in

*Ard* fell outside the agency's six month borderline period, the court expressly left "for another day" the question of what an ALJ must do to adequately consider application of the higher age category when a borderline situation actually exists. *Id.* at 620 n.5. Thus, although *Pupo* lends support to the Commissioner's position, neither *Ard* nor any other controlling Fourth Circuit authority establishes that VE testimony necessarily cures an admitted failure to consider borderline age in a case that actually falls within the agency's borderline period.

Other courts have concluded that an individualized RFC assessment and VE testimony do not necessarily resolve the separate question of which age category should apply. In *Campbell v. Colvin*, No. 1:15-cv-00165, 2015 WL 8484457, at *5-6 (M.D.N.C. Dec. 9, 2015), the court rejected the Commissioner's argument that the claimant's RFC and VE testimony adequately accounted for the relevant vocational circumstances. The court explained that identifying jobs an individual can perform under the younger age category does not answer whether the younger category was properly selected in the first instance. *Id.* The Fifth Circuit reached a similar conclusion in *Schofield v. Saul*, 950 F.3d 315, 320-22 (5th Cir. 2020).

The undersigned finds that distinction persuasive in this case. The hypothetical presented to the VE assumed Claimant's age and other vocational characteristics and asked whether an individual with those characteristics and the assessed RFC could perform work. (Tr. at 115-18). The resulting testimony established the existence of jobs under the vocational profile supplied by the ALJ. It did not address whether Claimant should have been treated as a younger individual or as an individual closely approaching advanced age. Accordingly, the VE's identification of available jobs does not itself explain the ALJ's selection of the younger age category.

The Commissioner also relies upon the Appeals Council's consideration of the issue. (ECF No. 5 at 8-10). In denying review, the Appeals Council stated: "We considered the borderline age situation in this case, and we found that the factors in the record do not support application of the higher age category." (Tr. at 2). Claimant contends that this statement does not cure the ALJ's omission because the Appeals Council did not identify the factors it considered or explain why those factors supported use of Claimant's chronological age. (ECF No. 6 at 1-3).

The Appeals Council's use of that language does not itself constitute procedural error. Agency guidance specifically instructs the Appeals Council to include substantially the same statement when an ALJ did not expressly address borderline age but the Appeals Council nevertheless concludes that denial of review is appropriate. HALLEX HA 01330.025(B)(1). Moreover, the Fourth Circuit has held that the Appeals Council is generally not required to explain its reasons for denying review. *Meyer v. Astrue*, 662 F.3d 700, 705-06 (4th Cir. 2011).

Nevertheless, when the Appeals Council denies review, the ALJ's decision remains the Commissioner's final decision. *Id.* at 705. Although the Appeals Council need not provide the same detailed findings required of an ALJ, the administrative record as a whole must still permit meaningful judicial review. *Id.* at 707. Where the Court cannot determine whether substantial evidence supports the agency's determination without resolving a factual issue committed to the Commissioner, remand is appropriate. *Id.*

Claimant relies upon *Gregory v. Kijakazi*, No. 5:20-cv-00149-D, 2021 WL 3415183, at *5-6 (E.D.N.C. July 12, 2021), *report and recommendation adopted*, 2021 WL 3412553 (E.D.N.C. Aug. 4, 2021). (ECF No. 6 at 2-3). There, the ALJ did not address

the claimant's borderline age status, and the Appeals Council stated that it had considered the borderline age situation but found that the record did not support application of the higher category. *Gregory*, 2021 WL 3415183, at *5-6. The court found that the statement did not provide sufficient insight into the agency's reasoning to permit meaningful review. *Id.* at *6. Although *Gregory* is not controlling authority and predates *Ard*, its reasoning is persuasive under the circumstances presented in this matter.

The Commissioner identifies factors that could support retention of Claimant's chronological age. Claimant was near the outer boundary of the six month period, which is relevant under the agency's sliding-scale approach. (ECF No. 5 at 9). She also had a high school education and a history of semiskilled work. In addition, the VE identified jobs that remained available despite the limitations contained in the RFC. (*Id.* at 9-10). These considerations could provide a reasonable basis for retaining the younger age category after an appropriate administrative evaluation.

The obstacle is that the agency did not articulate that analysis. The Appeals Council simply stated its conclusion, while the more detailed explanation appears in the Commissioner's brief. Claimant argues that those additional reasons constitute *post hoc* rationalization. (ECF No. 6 at 3-4). A reviewing court ordinarily must evaluate an administrative decision based on the rationale supplied by the agency rather than reasons first advanced by counsel during litigation. *See Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988).

The absence of an administrative explanation is significant because the ALJ found that Claimant's additional limitations impeded her ability to perform all or substantially all of the requirements of sedentary work. (Tr. at 90). In addition to

limiting Claimant to sedentary exertion, the ALJ imposed postural, environmental, mental, and social restrictions. (Tr. at 87). Agency guidance permits consideration of an additional RFC limitation when it adversely affects the remaining occupational base, even if the restriction does not substantially erode that base. POMS DI 25015.006(E)(1)(d). Neither the ALJ nor the Appeals Council explained whether any of Claimant's additional limitations constituted vocational adversity for purposes of the borderline age analysis or how those limitations were weighed against her proximity to the outer end of the six month period.

The undersigned does not find that Claimant's additional restrictions necessarily require application of the higher age category or that every vocational requirement of Rule 201.14 is satisfied. The Commissioner may ultimately reach the same conclusion after evaluating the issue. However, determining the vocational significance of Claimant's limitations and weighing those limitations against the other relevant factors requires an administrative judgment that the ALJ admittedly did not make.

The error likewise cannot be deemed harmless on the present record. In *Calhoun v. Commissioner of Social Security*, No. 24-1315, 2026 WL 2602326, at *4 (4th Cir. Sept. 3, 2026), the Fourth Circuit explained that remand is unnecessary when the Court can confidently conclude that no reasonable ALJ, fully crediting the relevant evidence, could reach a different result. In *Calhoun*, the VE had already testified that the same representative jobs remained available under the more restrictive limitation advocated by the claimant. Thus, the court could determine from an alternative vocational premise actually tested in the administrative record that the alleged error did not affect the outcome. *Id.*

The same cannot be said here. The Commissioner acknowledges both that a borderline age situation may exist and that the ALJ did not evaluate it. (ECF No. 5 at 9). Application of the next higher category could change the result under the Medical-Vocational Guidelines. (ECF No. 4 at 3-4; ECF No. 5 at 9). Yet, no administrative finding evaluates Claimant's vocational circumstances under that category or explains why her chronological age more accurately reflects her ability to adjust to other work. To find the omission harmless, the Court would have to perform the required vocational balancing itself and potentially resolve the transferability issue in the first instance. The Court cannot confidently conclude on this record that no reasonable adjudicator could reach a different result after properly considering Claimant's borderline age status.

Therefore, the undersigned **FINDS** that the Commissioner's decision should be remanded for proper consideration of whether Claimant's borderline age status warranted application of the next higher age category. On remand, the Commissioner should determine the appropriate age category after considering the relevant vocational factors, explain the basis for the category selected, and make any additional vocational findings necessary to apply the appropriate Medical-Vocational Rule. The present record does not establish that Claimant is entitled to an immediate award of benefits because further administrative findings are required.

## VIII. Recommendations for Disposition

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's request for judgment on the pleadings, (ECF No. 4), to the extent that it requests remand of the Commissioner's decision; **DENY** Defendant's request to affirm the decision of the

Commissioner, (ECF No. 5); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this case, with prejudice, and remove it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED**: October 6, 2026

/s/ James P. Mazzone

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE